[964 NE2d 1010, 941 NYS2d 543]

In the Matter of STEPHEN ROSENBLUM, Respondent, v NEW YORK CITY CONFLICTS OF INTEREST BOARD et al., Appellants.

Argued January 11, 2012; decided February 9, 2012

*Michael A. Cardozo, Corporation Counsel,* New York City (*Stephen J. McGrath, Andrea J. Berger, Spencer Fisher* and *Susan B. Eisner* of counsel), for appellants. The New York City Conflicts of Interest Board is authorized to commence a hearing against petitioner at the Office of Administrative Trials and Hearings for a violation of the Conflicts of Interest Law. (*Matter of City of New York v Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO,* 95 NY2d 273; *Matter of New York State Off. of Children & Family Servs. v Lanterman,* 14 NY3d 275; *Matter of Felix v New York City Dept. of Citywide Admin. Servs.,* 3 NY3d 498; *Matter of Board of Higher Educ. of City of N.Y. v Allen,* 6 NY2d 127; *Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib.,* 2 NY3d 249; *People v Judiz,* 38 NY2d 529; *People v Van Buren,* 4 NY3d 640; *Holt v Board of Educ. of Webutuck Cent. School Dist.,* 52 NY2d 625; *Belle v Town Bd. of Town of Onondaga,* 61 AD2d 352; *Matter of Maloff v City Commn. on Human Rights,* 38 NY2d 329.)

*Bruce K. Bryant,* Brooklyn, *David N. Grandwetter* and *Charity M. Guerra* for respondent. I. The courts below correctly

determined that the New York City Conflicts of Interest Board and the Office of Administrative Trials and Hearings do not have jurisdiction to prosecute and discipline petitioner and their attempt to do so violates Education Law § 3020-a. (*Matter of Lynch v Nyquist*, 34 NY2d 588; *TeBordo v Cold Spring Harbor Cent. School Dist.*, 126 AD2d 542; *Matter of Board of Educ. of City School Dist. of City of N.Y. v Mills*, 250 AD2d 122; *Matter of Awaraka v Board of Educ. of City of N.Y.*, 59 AD3d 442; *Matter of Watkins v Board of Educ. of Port Jefferson Union Free School Dist.*, 26 AD3d 336; *Matter of Syquia v Board of Educ. of Harpursville Cent. School Dist.*, 80 NY2d 531; *Brotherhood of Locomotive Engrs. Div. 269 v Long Is. R.R. Co.*, 85 F3d 35; *Matter of New York State Off. of Children & Family Servs. v Lanterman*, 14 NY3d 275; *Matter of Felix v New York City Dept. of Citywide Admin. Servs.*, 3 NY3d 498.) II. Even if Education Law § 3020-a does not preclude an independent prosecution by the New York City Conflicts of Interest Board (COIB), City Charter § 2603 (h) (2) requires the COIB to refer alleged violations by tenured employees to the employer for section 3020-a discipline. (*Matter of Rankin v Lavine*, 41 NY2d 911; *Matter of Frick v Bahou*, 56 NY2d 777.)

*Richard E. Casagrande*, New York City, and *Keith J. Gross* for New York State United Teachers, amicus curiae. I. Education Law § 3020-a is the exclusive avenue to discipline a tenured pedagogue. (*Matter of Board of Educ. of City School Dist. of City of N.Y. v Mills*, 250 AD2d 122, 93 NY2d 803.) II. A fine constitutes discipline under both the Education Law and Conflicts of Interest Law.

*Paul Hastings LLP*, New York City (*Douglas Koff* of counsel), and *Jeremy Feigelson* for Association of the Bar of the City of New York, amicus curiae. "Discipline" in Education Law § 3020 does not encompass the New York City Conflicts of Interest Board's imposition of a fine against a tenured education employee. (*Holt v Board of Educ. of Webutuck Cent. School Dist.*, 52 NY2d 625; *People v Santi*, 3 NY3d 234; *Matter of Sutka v Conners*, 73 NY2d 395; *Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d 372.)

*Proskauer Rose LLP*, New York City (*Peter J.W. Sherwin*, *Matthew J. Morris* and *Justin M. Collins* of counsel), for Citizens Union, amicus curiae. The Conflicts of Interest Board has a vital mandate that other agencies cannot fulfill, which does not conflict with the Education Law. (*Matter of City of New York v*

*Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO*, 95 NY2d 273; *Golden v Clark*, 76 NY2d 618; *Evans v Carey*, 40 NY2d 1008, *Matter of Nicholas v Kahn*, 47 NY2d 24; *Matter of Edge Ho Holding Corp.*, 256 NY 374; *41 Kew Gardens Rd. Assoc. v Tyburski*, 70 NY2d 325; *Lane v City of Mount Vernon*, 38 NY2d 344; *Matter of Levy v City Commn. on Human Rights*, 85 NY2d 740; *Holt v Board of Educ. of Webutuck Cent. School Dist.*, 52 NY2d 625; *Matter of Bott v Board of Educ., Deposit Cent. School Dist.*, 41 NY2d 265.)

## OPINION OF THE COURT

READ, J.

We hold that the Conflicts of Interest Board of the City of New York (the Board or COIB) is authorized to enforce the Conflicts of Interest Law (NY City Charter §§ 2600-2607) against a public servant who is subject to discipline under sections 3020 and 3020-a of the Education Law. As a result, the lower courts improperly prohibited respondents COIB and the City's Office of Administrative Trials and Hearings (OATH) from proceeding with an administrative trial against petitioner Stephen Rosenblum, a tenured assistant principal in the City's public school system.

I.

In 1964, the Legislature enacted General Municipal Law article 18 to "define areas of conflicts of interest in municipal transactions," while "leaving to each community the expression of its own code of ethics" (L 1964, ch 946, § 1). New York City's Conflicts of Interest Law is applicable to all of the City's current and former employees, and sets out various ethics rules designed "to preserve the trust placed in the public servants of the city, to promote public confidence in government, to protect the integrity of government decision-making and to enhance government efficiency" (NY City Charter § 2600).

Adopting the recommendation of the Charter Revision Commission, City voters in 1988 approved the creation of COIB as an independent body with the power to enforce the Conflicts of Interest Law (*id.* §§ 2602-2603). Whenever the Board receives a written complaint alleging violations of the law, it must take one of four actions: dismiss the complaint if it determines no further steps are required; send the complaint to the Commissioner of the City's Department of Investigation for further inquiry; make an initial determination that there is probable

cause to believe that a violation of the Conflicts of Interest Law has occurred; or refer the matter to the head of the agency employing the public servant in those cases where the violation is deemed minor, or related disciplinary charges are pending there (*id.* § 2603 [e] [2]).

Once the Board makes an initial determination, whether based on a complaint, investigation or other information, it must notify the public servant in writing of the alleged violation (*id.* § 2603 [h] [1]). If, after consideration of the public servant's response to this notice, the Board determines that there remains probable cause, it

> "shall hold or direct a hearing to be held on the record to determine whether such violation has occurred, or shall refer the matter to the appropriate agency if the public servant is subject to the jurisdiction of any state law or collective bargaining agreement which provides for the conduct of disciplinary proceedings, provided that when such a matter is referred to an agency, the agency shall consult with the board before issuing a final decision" (*id.* § 2603 [h] [2]; *see also* 53 RCNY 2-02 [a]; 2-03).

The hearing is conducted by the Board or, upon its behalf, by a Board member, or the Chief Administrative Law Judge or an assigned administrative law judge (ALJ) from OATH (*see* 53 RCNY 2-03), which has jurisdiction to conduct adjudicatory hearings for all City agencies (NY City Charter § 1048).

Following the hearing, the hearing officer reports recommended findings of fact, conclusions of law and a proposed disposition for the Board's review and final action (*see* 53 RCNY 2-04 [a]). If the Board determines that a violation of the Conflicts of Interest Law has occurred, it

> "shall, after consultation with the head of the agency served or formerly served by the public servant . . . issue an order either imposing such penalties provided for by this [Conflicts of Interest Law] as it deems appropriate, or recommending such penalties to the head of the agency served or formerly served by the public servant,"

with the exception of members of the City Council and staff, where COIB's authority is limited to recommending penalties to the Council (NY City Charter § 2603 [h] [3]; *see also id.* § 2606 [b] [Upon determination of a violation, the Board, "after

consultation with the head of the agency involved . . . shall have the power to impose fines of up to twenty-five thousand dollars, and to recommend to the appointing authority (i.e., the employing agency), or person or body charged by law with responsibility for imposing such penalties, suspension or removal from office or employment"]).

Finally, section 2603 (h) (6) of the Charter specifies that

"[n]othing contained in this section [2603] shall prohibit the appointing officer [i.e., the employing agency] of a public servant from terminating or otherwise disciplining such public servant, where such appointing officer is otherwise authorized to do so; provided, however, that such action by the appointing officer shall not preclude the board from exercising its powers and duties under [the Conflicts of Interest Law] with respect to the actions of any such public servant."

From its creation in November 1988 through 2009, the Board has imposed fines on 379 public servants.

In 2007, Rosenblum was employed by the New York City Department of Education (DOE) as a probationary principal at Intermediate School (I.S.) 281, a middle school in Community School District 21 in Brooklyn. COIB received a complaint that Rosenblum had approached the principal of I.S. 228, another middle school in the district, on October 24, 2007 to request favorable treatment for his son, a teacher at I.S. 228. Rosenblum's son, who had been removed from the classroom the previous month because of allegations of misconduct, was at risk of being fired. Rosenblum was alleged to have offered for his son to "leave the school and seek a job elsewhere" if the principal of I.S. 228 accommodated Rosenblum by acting to "save" his son's employment with DOE.

By notice dated April 28, 2008, the Board advised Rosenblum of its initial determination that there was probable cause to believe that this encounter violated section 2604 (b) (3) of the Conflicts of Interest Law, which prohibits a public servant from "us[ing] or attempt[ing] to use his or her position as a public servant to obtain any . . . private or personal advantage, direct or indirect, for the public servant or any person or firm associated with the public servant." In an answer dated June 27, 2008, Rosenblum asserted that he had "at no time . . . discussed his son's employment situation" with the principal of I.S. 228.

On August 15, 2008, the Board referred the matter to DOE, Rosenblum's employing agency, as required by section 2603 (h) (2) and its rules (*see* 53 RCNY 2-02 [a]);[1] on October 7, 2008, DOE informed the Board that it was not going to take disciplinary action against Rosenblum. That same day, the Board served Rosenblum with a petition asking OATH to find that he had violated the law and to impose a $10,000 fine (the maximum allowed at the time) and grant such further relief as might be just and proper. Rosenblum answered and moved to dismiss on October 17, 2008, arguing that Education Law §§ 3020, 3020-a and 2590-j (7), as supplemented by the collective bargaining agreement (CBA) between DOE and his union, the Council of Supervisors and Administrators, Local 1, AFSA, AFL-CIO (CSA), was the exclusive method for disciplining a tenured pedagogue.

Section 3020 (1), entitled "Discipline of teachers," specifies that "[n]o person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article or in accordance with alternate disciplinary procedures contained in a [CBA] covering his or her terms and conditions of employment" (*see also* Education Law § 3020 [3] ["Notwithstanding any inconsistent provision of law, the procedures set forth in (Education Law § 3020-a) and (Education Law § 2590-j) may be modified or replaced by agreements negotiated between the city school district of the city of New York and any employee organization representing employees or titles that are or were covered by any

---

1. This provision states as follows:
"(a) *Determination of Probable Cause.* If, after consideration of the public servant's response, the Board determines that there remains probable cause to believe that a violation of the provisions of [the Conflicts of Interest Law] has occurred, and the public servant has not elected to forego the hearing, the Board shall hold or direct a hearing to be held on the record to determine whether such violation has occurred.
"If the public servant is subject to the jurisdiction of a state law provision or collective bargaining agreement which provides for the conduct of a disciplinary hearing by another body, the Board shall refer the matter to the appropriate entity. The hearing shall be conducted in accordance with the rules of that entity.
"The Board may also refer a matter to the public servant's agency if the Board deems the violation to be minor or if other disciplinary charges are pending there against the public servant" (53 RCNY 2-02 [a]).

memorandum of agreement executed by such city school district and (CSA)"]).

Section 3020-a sets out the disciplinary procedures and penalties applicable where charges are brought against "a person enjoying the benefits of tenure as provided in . . . [Education Law § 2590-j]." Where a penalty is imposed, it

> "may be a written reprimand, a fine, suspension for a fixed time without pay, or dismissal. In addition to or in lieu of [these] penalties, the hearing officer, where he or she deems appropriate, may impose upon the employee remedial action including but not limited to leaves of absence with or without pay, continuing education and/or study, a requirement that the employee seek counseling or medical treatment or that the employee engage in any other remedial or combination of remedial actions" (Education Law § 3020-a [4] [a]).

Section 2590-j (7) (a) concomitantly specifies that "[n]o member of the teaching or supervisory staff of schools who has served the full and appropriate probationary period prescribed by, or in accordance with law, shall be found guilty of any charges except after a hearing as provided by [Education Law § 3020-a]."

On January 21, 2009, the ALJ denied Rosenblum's motion, relying on OATH precedent holding that section 2603 (h) (2) of the City Charter did not preclude the Board from bringing an enforcement proceeding in cases where the employing agency elected not to prosecute. The ALJ further opined that section 2603 (h) (6) "also makes plain that the jurisdiction of [COIB] to enforce the Ethics Law is separate and apart from the jurisdiction of an appointing agency to commence a disciplinary proceeding against its employees"; and that the Board's action was not discipline within the meaning of Education Law §§ 3020 and 3020-a. The ALJ directed that the hearing commence on January 29, 2009.

On January 28, 2009, Rosenblum commenced this CPLR article 78 proceeding, seeking to prohibit the Board and OATH from proceeding with the scheduled administrative trial. Supreme Court granted the petition (2009 NY Slip Op 31073[U] [Sup Ct, NY County 2009]). The judge decided that a fine imposed by the Board would constitute discipline under Education Law § 3020 because section 3020-a's penalties include a

fine; and that section 2603 (h) (6) did not authorize the Board to proceed against Rosenblum once DOE declined to discipline him and, even if it were otherwise, a state statute trumps a local law. The Board and OATH appealed.

The Appellate Division affirmed, concluding that Supreme Court "properly held that the exclusive avenue to discipline a tenured pedagogue is Education Law § 3020-a, and thus it would be violative of the Education Law to allow an OATH hearing which does not require the same procedural protections" (75 AD3d 426, 427 [1st Dept 2010] [citations omitted]). The court observed that "the fine sought to be imposed . . . is included in the types of discipline specifically enumerated by [Education Law § 3020-a (4) (a)] as penalties" (*id.*). We granted the Board and OATH permission to appeal (16 NY3d 706 [2011]), and now reverse.

## II.

Rosenblum argues that Education Law § 3020 (1) and § 3020-a establish the exclusive means to discipline him; a fine, because specified as one of the penalties that might be imposed under section 3020-a (4) (a), constitutes discipline; therefore, COIB does not possess jurisdiction to prosecute him for an alleged violation of the Conflicts of Interest Law since an adverse determination might result in a fine. Alternatively, he interprets section 2603 (h) (2) of the City Charter to divest COIB of jurisdiction where a state law or a CBA provides for the employing agency to conduct disciplinary proceedings against a public servant. In essence, Rosenblum contends the employing agency enjoys veto power over Board action in such circumstances. In his case then, Rosenblum reasons, COIB may not take him to a hearing at OATH because DOE declined to pursue the alleged ethics violation under sections 3020 and 3020-a of the Education Law.

First, we see no reason or precedent for defining "discipline" as broadly as Rosenblum urges. There is no dispute that sections 3020 and 3020-a set out the exclusive means *for DOE* to sanction a tenured pedagogue, including by imposing a fine. It does not follow, however, that COIB may not fine a DOE employee for violating the Conflicts of Interest Law, a separate statutory scheme designed to protect governmental integrity, not to safeguard a tenured pedagogue from arbitrary action by DOE that might adversely affect the terms and conditions of his

employment. While COIB may recommend that DOE suspend or remove a tenured pedagogue from employment for an ethics violation (NY City Charter § 2606 [b]), the Board itself may only levy a fine for the act prompting its recommendation. In our view, then, "discipline" within the meaning of sections 3020 and 3020-a encompasses only job-related penalties that may be imposed upon a tenured pedagogue by his employer—a local school board or, in the case of the City, DOE.[2]

Interestingly, the words "discipline" and "disciplinary" did not even appear in sections 3020 and 3020-a of the Education Law until 1994, several years after the creation of COIB, when the Legislature changed the title of the former from "Dismissal of teachers" to "Discipline of teachers," and the title of the latter from "Hearing procedures and penalties" to "Disciplinary procedures and penalties" (see L 1994, ch 691, § 2). These and other revisions to sections 3020 and 3020-a codified recommendations of a Moreland Act Commission appointed by Governor Mario Cuomo to study and suggest ways to improve the State's public school system. The Commission concluded, after extensive public hearings, that the procedures for bringing misconduct charges against tenured teachers "resulted in hearings that were far too expensive and time-consuming . . . estimated to cost in excess of $80,000, and in many instances [to] take over one year to resolve" (Governor's Approval Mem, Bill Jacket, L 1994, ch 691).[3] Seeking to "balance due process protection for tenured teachers against the need for districts to have an expedient and cost-effective tool for maintaining disciplinary standards," the Commission recommended several reforms, including replacing the then existing three-member hearing panel in teacher misconduct cases with a single hearing officer empowered "to impose a broad range of penalties, including

---

2. Because we conclude that the Conflicts of Interest Law is not inconsistent with sections 3020 and 3020-a of the Education Law, we need not address Rosenblum's argument that in the event of a conflict the latter would necessarily trump the former.

3. Teacher misconduct hearings are apparently even more protracted today: As part of his 2012-2013 executive budget, Governor Andrew Cuomo has proposed legislation to amend sections 3020 and 3020-a yet again so as to reduce backlogs and costs. According to the Governor, "[r]ecent records show that the arbitration process lasts *an average of 653 days*—far exceeding the statutory timeframe of 155 days" (see Briefing Book, 2012-2013 Executive Budget and Reform Plan, at 27, available at http://publications.budget.ny.gov/eBudget1213/fy1213littlebook/BriefingBook.pdf [emphasis added]).

mandatory remedial action to improve a teacher's performance" (*id.*).[4]

Chapter 691, which originated as part of the Governor's 1994 Legislative Program, thus includes the words "discipline" and "disciplinary" in the titles of sections 3020 and 3020-a respectively to reflect the expanded menu of potential penalties and remedies put in place by the Legislature to carry out the Commission's recommendations, not to preclude public entities other than a tenured pedagogue's employer from seeking sanctions for employee misconduct. As the City points out, no one would seriously suggest, for example, that the district attorney could not prosecute a tenured pedagogue for a crime committed on school grounds simply because DOE might (or declined to) pursue a disciplinary action arising out of the same act. Likewise, COIB may impose a fine on a tenured pedagogue for an ethics violation even though DOE is authorized to penalize this employee pursuant to sections 3020 and 3020-a for the same act.

Second, the text and legislative history of the Conflicts of Interest Law belie the notion that the Board may not fine City employees, such as tenured pedagogues, who are also subject to a State law or CBA providing for disciplinary proceedings.[5] Such an interpretation would effectively convert the Board from an independent enforcement agency into an investigative and advisory arm of other City agencies. This is inconsistent with a major reason for the 1988 Charter revision—to create COIB as an entity with the power, which its predecessor the Board of Ethics lacked, to commence administrative actions to enforce the Conflicts of Interest Law.

Section 2603 (h) (2) of the Conflicts of Interest Law requires the Board to refer an alleged ethics violation to the public servant's employing agency before holding a hearing, and for that agency to consult with the Board before making a final decision. This certainly makes sense as the employing agency may not otherwise be aware of the circumstances underlying the alleged ethics violation and is free to pursue a wider range of penalties for misconduct than the Board. It does not follow,

---

4. At the time, an employing board was only authorized to implement a "penalty or punishment, if any, of a reprimand, a fine, suspension for a fixed time without pay or dismissal" (former Education Law § 3020-a [4]).

5. The Board tells us that over 90% of the City's workforce is entitled to the civil service protections afforded by section 3020-a or similar provisions of State law.

though, that the Board is precluded from proceeding if the agency decides not to pursue disciplinary charges against the public servant for an ethics violation. In many cases, the employing agency may consider it more efficient and cost-effective to defer to the Board, especially where the agency concludes that a fine is the only reasonable potential penalty for the misconduct alleged, even if proven. As noted previously, for example, section 3020-a proceedings last, on average, nearly two years (see n 3, supra). Further, section 2603 (h) (6) of the Conflicts of Interest Law specifically states that the Board is not prevented from acting where the employing agency, in fact, decides to terminate or otherwise discipline a public servant. If the Board may still act when the employing agency has imposed discipline, there is no basis for interpreting the Conflicts of Interest Law as forbidding the Board from acting where the agency has elected not to pursue disciplinary action, especially since such a decision does not connote vindication.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.

SMITH, J. (dissenting). Education Law § 3020 (1) says: "No person enjoying the benefits of tenure shall be disciplined . . . except . . . in accordance with the procedures specified" in Education Law § 3020-a or a collective bargaining agreement. The only question in this case is whether the fine that the New York City Conflicts of Interest Board (COIB) seeks to impose on petitioner is discipline. I see no escape from the conclusion that it is.

In common sense, of course an employee who is fined by his employer for acting unethically is being disciplined. "Discipline" is the word commonly used to refer to a punishment imposed by an employer on an employee for an infraction of the employer's rules. (By contrast, criminal punishment is not commonly spoken of as "discipline." Thus, the analogy that the majority draws between a criminal prosecution and a COIB proceeding [majority op at 432] is inapt.) The majority seems to suggest that only the Department of Education (DOE), not the City, is petitioner's "employer" (majority op at 431), but that cannot be right. If petitioner were not an employee of the City, he would not be a "public servant" as that term is defined in section 2601 (19) of the New York City Charter, and the COIB would have no jurisdiction over him.

It seems self-evident to me that a fine imposed by one's employer is a form of discipline, but if there were any doubt it

would be resolved by Education Law § 3020-a, which is titled "Disciplinary procedures and penalties." The "penalties" are listed in section 3020-a (4) (a), and "a fine" is among them.

A football player who is fined for breaking curfew has been disciplined. Why is the same not true of an assistant principal fined for the conduct at issue here? Suppose the COIB is successful in this case, and petitioner is required to pay a fine. If he is later asked if he has ever been disciplined, and says no, would anyone say that the answer was truthful?

Thus, the Education Law in plain terms gives petitioner immunity from the kind of proceeding the COIB is bringing in this case. Nothing in the City Charter provisions that empower and regulate the COIB alters that conclusion. Section 2603 (h) (2) of the Charter, which provides for hearings by the COIB, says that the COIB:

> "shall refer the matter to the appropriate agency if the public servant is subject to the jurisdiction of any state law or collective bargaining agreement which provides for the conduct of disciplinary proceedings, provided that when such a matter is referred to an agency, the agency shall consult with the [COIB] before issuing a final decision."

This section, if anything, strengthens petitioner's argument, for it implies that where a "state law or collective bargaining agreement" is applicable it is "the agency" (here, DOE) that should make the "final decision."

The City relies, as does the majority, on section 2603 (h) (6) of the Charter, which says:

> "Nothing contained in this section shall prohibit the appointing officer of a public servant from terminating or otherwise disciplining such public servant, where such appointing officer is otherwise authorized to do so; provided, however, that such action by the appointing officer shall not preclude the board from exercising its powers and duties under this chapter with respect to the actions of any such public servant."

The City reads this language—reasonably enough—to say that the decision of the DOE ("the appointing officer") in this case not to proceed against petitioner does not "preclude" the COIB from doing so. While the provision says only that "action" by the appointing officer in terminating or otherwise

disciplining the employee "shall not preclude" a COIB-initiated proceeding, it is fair to infer that a decision *not* to take such action also will not have preclusive effect. Here, however, no one is saying that the DOE's choice not to proceed against petitioner is preclusive. What precludes discipline by the COIB is the plain language of Education Law § 3020. The Charter provision does not say, and cannot plausibly be read to imply, that the Education Law provision is inapplicable to discipline imposed by the COIB.

As the majority suggests, it may well be more efficient—it may on the whole be highly desirable—for the COIB to be able to proceed against a tenured DOE employee, regardless of whether the DOE thinks discipline is justified. If that is so, then the Legislature made an unwise choice in providing that such employees may be disciplined only as provided in the Education Law or a collective bargaining agreement. But the Legislature did make that choice, and expressed it in plain language, and we should apply the statute as written.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO and PIGOTT concur with Judge READ; Judge SMITH dissents in a separate opinion in which Judge JONES concurs.

Order reversed, etc.