OPINION OF THE COURT
Chief Judge Lippman.
By letter dated September 23, 2011, respondent School District notified petitioner, a tenured school social worker, that she was to be suspended for 30 days without pay for specified misconduct. Petitioner made a written request for a hearing on the specifications pursuant to Education Law § 3020-a, but was advised by respondent that she was not entitled to the process prescribed in that statute, and could challenge the disciplinary determination against her only by means of the procedures set forth in the collective bargaining agreement (CBA) between the School District and the Rochester Teachers Association, then most recently renegotiated in 2006. That agreement provided in relevant part:
“Except as specified elsewhere in this Section, any disciplinary action imposed upon any eligible *508 teacher may be processed as a grievance and arbitration procedure” (emphasis added).[1]
After unsuccessfully grieving the matter via the process specified in the CBA, petitioner commenced this CPLR article 78 proceeding to annul the disciplinary determination, alleging that she had been disciplined without being afforded the process to which she was entitled under the Education Law as a tenured school district employee. She pointed out that the relevant CBA had been altered through renegotiation and had taken effect since September 1, 1994, and that Education Law § 3020 (l)[2] required, in substance, that all CBAs altered by renegotiation or becoming effective on or after September 1, 1994 afford eligible (i.e., tenured) school district employees the option of challenging the imposition of discipline by the process set forth in Education Law § 3020-a, notwithstanding the provision of an alternative process in a CBA. Supreme Court, however, understood Education Law § 3020 (1) to grandfather alternative, mandatorily prescribed pre-September 1, 1994 CBA discipline procedures for as long after September 1, 1994 as those procedures remained unaltered, even if the CBA in which they were contained had during the same period been altered in other respects through renegotiation.
*509 Finding this understanding of the statute at odds with the provision’s plain language, the Appellate Division reversed and granted the petition (107 AD3d 1536, 1537 [2013]). It read the statute categorically to require that all CBAs becoming effective on or after September 1, 1994 afford eligible employees facing discipline the right to elect the review process provided by Education Law § 3020-a, even if the CBA retained an unaltered alternative grievance procedure originally agreed upon before September 1, 1994 (107 AD3d at 1537). Inasmuch as the governing CBA took effect in 2006, petitioner, in the court’s view, had the right pursuant to Education Law § 3020 (1) to choose the statutory review process over the alternative grievance procedure contained in the CBA, and the School District’s failure to honor that right required the annulment of the challenged discipline, imposed without the process to which petitioner was entitled (id.). The matter is now before us pursuant to leave granted by this Court (22 NY3d 854 [2013]) and we affirm.
Prolix though the governing statute, Education Law § 3020 (1), may seem, it is plain that the legislative intent informing its 1994 amendment (L 1994, ch 691) was to assure that tenured educators against whom formal disciplinary charges were lodged could avail themselves, if they so chose, of the procedural protections set forth in contemporaneously amended Education Law § 3020-a. While section 3020 (1) does “grandfather” preSeptember 1, 1994 CBA discipline review procedures contained in unaltered CBAs, its evidently dominant purpose was prospectively to secure the right of tenured employees to avail themselves of the process set forth in Education Law § 3020-a. That purpose and the indefinite retention of mandatory alternative CBA review procedures are not easily, if at all, reconcilable. With that in mind, we believe the statute must be understood to sunset CBA provisions depriving tenured employees of the section 3020-a recourse to which they are otherwise entitled. Respondents object that the phasing out of these provisions would deprive the CBA parties of a bargained for benefit or detriment, but it is manifest that the 1994 amendment of Education Law § 3020 (1) was intended precisely to render a tenured employee’s right to elect the statutory process in the event of discipline generally nonnegotiable. We have, of course, previously recognized the importance the legislature has accorded the status of tenure in the educational context as well as its attendant purpose to preserve the process by which tenured educators are to be disciplined and removed against the vagar *510 ies of collective bargaining (see Holt v Board of Educ. of Webutuck Cent. School Dist., 52 NY2d 625, 632 [1981]).
While, understandably, the legislature did not in its 1994 amendment of section 3020 (1) undertake to invalidate negotiated provisions in then operative CBAs,[3] or to disallow the continued inclusion in CBAs of alternative, more “streamlined” discipline procedures, neither did it countenance the indefinite perpetuation of CBA terms depriving tenured employees of the choice of process it expressly guaranteed. Thus, the statute unambiguously provides that when a CBA is altered by renegotiation or takes effect on or after September 1, 1994, it must permit tenured employees to elect section 3020-a’s discipline review procedures, notwithstanding the availability of alternative, CBA-prescribed procedures. The School District’s and dissent’s proposed interpretation — that only renegotiation of alternative CBA discipline procedures themselves (as opposed to renegotiation of the CBA in which they are contained), is capable of triggering the statutorily required employee option — is not only grammatically unavailable (since the phrases “that was effective” and “and has been unaltered by renegotiation” unmistakably refer to the CBA in its entirety and not to any distinct CBA components), but at odds with section 3020 (l)’s manifest purpose of eventually ensuring that all tenured educators will have the nonnegotiable right to avail themselves of the disciplinary process prescribed by the 1994 Education Law amendments.
The relevant legislative history does not suggest that respondent’s proposed gloss is viable. It is true that that history does indicate that a purpose of the 1994 amendments was to continue to authorize the use of alternative, bargained-for discipline procedures (see e.g. Governor’s Program Bill Mem, Bill Jacket, L 1994, ch 691 at 7-9), but it does not follow that the legislature also meant to deny tenured educators facing disci *511 pline the right to elect the likely more protective review procedures set forth in Education Law § 3020-a.[4] That section, we note, was extensively revised as part of the 1994 Education Law amendments to make the statutory review process less cumbersome. And, in view of that reworking, the rationale for permitting the statutory process to be supplanted by bargained-for CBA alternatives became significantly less compelling. In any case, it is the language of the statute that is the best evidence of the legislature’s intent (Riley v County of Broome, 95 NY2d 455, 463 [2000]), and Education Law § 3020-a plainly provides that, in any CBA taking effect on or after September 1, 1994, tenured employees must be permitted to elect the discipline procedures set forth in Education Law § 3020-a. Here, as the Appellate Division correctly observed, the determinative circumstance is that the governing renegotiated CBA became effective in 2006.
We would add that, while the statute would trump a CBA provision becoming effective on or after September 1, 1994 relegating a tenured employee exclusively to a non-statutory discipline procedure, we perceive no reason to conclude that the present CBA in fact does that. It provides merely that a disciplinary action “may,” not that it “must,” be processed in accordance with the agreement’s grievance and arbitration provisions.[5] Indeed, the record strongly suggests that it was only in view of the optional, and therefore statutorily inoffensive, character of the contractually available discipline process, that the provision, originally negotiated prior to September 1, 1994, was retained unaltered in the parties’ subsequent CBAs. Thus, even under the CBA itself, petitioner may well have not been foreclosed from invoking the statutory procedure.
Accordingly, the order of the Appellate Division should be affirmed, with costs.

. In a subsequent subsection of the CBA it is provided that no eligible teacher may be discharged without the process prescribed in Education Law §§ 3020 and 3020-a.

. The portion of Education Law § 3020 (1) relevant to the issues presently raised states:
“No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article or in accordance with alternate disciplinary procedures contained in a collective bargaining agreement covering his or her terms and conditions of employment that was effective on or before September first, nineteen hundred ninety-four and has been unaltered by renegotiation, or in accordance with alternative disciplinary procedures contained in a collective bargaining agreement covering his or her terms and conditions of employment that becomes effective on or after September first, nineteen hundred ninety-four; provided, however, that any such alternate disciplinary procedures contained in a collective bargaining agreement that becomes effective on or after September first, nineteen hundred ninety-four, must provide for the written election by the employee of either the procedures specified in such section three thousand twenty-a or the alternative disciplinary procedures contained in the collective bargaining agreement” (emphasis added).

. The grandfathering language which the dissent finds so significant as to justify the conclusion that the legislature made a grammatical error, even though textually the statute is grammatically unflawed, obviously does no more than emphasize that the statute is not intended to undo still effective pre-September 1, 1994 CBAs. We decline to ascribe to it a counter-textual purpose on the general theory that all grandfathering provisions are at cross-purposes with a broader legislative objective. That may be conceptually true but is not a particularly useful observation where, as here, the question is not whether there is some measure of grandfathering intended, but its extent. The statute, read in its entirety, addresses that question clearly and indeed with grammatical precision. It presents no occasion for the interpretive liberty the dissent proposes.

. Indeed, it was understood at the time of the legislation’s consideration that “[f]or collective bargaining agreements containing disciplinary procedures which are effective after September 1, 1994, the employee must be able to elect either the procedures contained in the agreement or those contained in 3020-a” (Governor’s Off of Employee Relations Mem in Support, Bill Jacket, L 1994, ch 691 at 24 [emphasis supplied]).

. That the CBA required section 3020-a process where the discharge of a tenured employee was sought, does not mean, as the District contends, that it purported to preclude a tenured employee from electing such process where less serious discipline was at issue.