[56 NYS3d 609]

In the Matter of ELAINE DEVERA, Individually and as Parent and Guardian of M.F., an Infant, et al., Petitioners, and SUSANA TAVERAS, Individually and as Parent and Guardian of K.R.R., an Infant, et al., Appellants, v MARYELLEN ELIA, as Commissioner of Education, et al., Respondents.

Third Department, June 8, 2017

14

**APPEARANCES OF COUNSEL**

*Sullivan & Cromwell, LLP*, New York City (*Steven L. Holley* of counsel), and *Emily A. Kim, Success Academy Charter Schools*, New York City, for appellants.

*Eric T. Schneiderman, Attorney General*, Albany (*Zainab Chaudhry* of counsel), for MaryEllen Elia, respondent.

*Zachary Carter, Corporation Counsel*, New York City (*Ingrid R. Gustafson* of counsel), for New York City Department of Education and another, respondents.

*Jones Day*, New York City (*Victoria Dorfman* of counsel), for Achievement First and others, amici curiae.

## OPINION OF THE COURT

McCarthy, J.P.

Appeal from a judgment of the Supreme Court (Elliott III, J.), entered June 17, 2016 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Commissioner of Education partially dismissing petitioners' challenge to certain conditions imposed upon their receipt of certain state funds.

In March 2014, the Legislature amended article 73 of the Education Law to add section 3602-ee, thereby establishing a statewide universal full-day prekindergarten program (hereinafter the SUFDPK program) (*see* Education Law § 3602-ee). The Legislature's stated purpose of the SUFDPK "program is to incentivize and fund state-of-the-art innovative pre[ ] kindergarten programs and to encourage program creativity through competition" (Education Law § 3602-ee [1]). Under the SUFDPK program, funds may be awarded either to school districts that have submitted "consolidated" applications to the New York State Department of Education (hereinafter the Department) on behalf of specified entities, including charter schools, that are located within the school districts or to individual entities that have been denied inclusion in their respective school districts' consolidated applications and have submitted applications to the Department directly (Education Law § 3602-ee [3] [a], [b]). The statute requires the Department to award funds on a competitive basis and evaluate applications based on the proposed programs' quality in terms of "curriculum," "learning environment, materials and supplies," "family engagement," "staffing patterns," "teacher education and experience," "facility," "physical well-being, health and nutrition" and "partnerships with non-profit, community and educational institutions" (Education Law § 3602-ee [2]; *see* Education Law § 3602-ee [5]).

In May 2014, pursuant to Education Law § 3602-ee, the Department released an "Announcement of Funding Op-

portunity" or request for proposals soliciting applications from relevant entities operating prekindergarten programs during the 2014-2015 school year. In July 2014, respondent New York City Department of Education (hereinafter DOE) submitted a consolidated application to the Department, seeking $300 million from the state to fund over 50,000 full-day prekindergarten slots during the 2014-2015 school year and an additional 20,000 slots during the 2015-2016 school year. DOE's application was thereafter granted by the Department. In December 2014, DOE released a request for proposals (hereinafter DOE's RFP) soliciting applications from charter schools interested in providing prekindergarten programs during the 2015-2016 school year. DOE's RFP provided that DOE was seeking charter schools that were "willing to collaborate with" it, and it set forth detailed requirements and expectations for the proposed programs. DOE's RFP also provided that funding awards were subject to execution of a contract between DOE and the selected applicants and that "no payments [would] be made by . . . DOE until the contract is registered with the [New York City] Comptroller's Office."

In January 2015, petitioner Success Academy Charter Schools-NYC (hereinafter Success Academy), a nonprofit education corporation operating and governing charter schools in New York City, submitted applications to DOE on behalf of three of its charter schools for funding to provide prekindergarten instruction during the 2015-2016 school year. In March 2015, DOE advised Success Academy that its proposed prekindergarten programs at the three schools were "conditionally eligible for" funding awards and that its receipt of funding was contingent upon timely completion of contract negotiations and timely submission of contract documents. DOE thereafter sent Success Academy three proposed contracts with substantially identical provisions—one for each school (hereinafter collectively referred to as the Pre-K contract). The provisions of the Pre-K contract set forth various requirements, beyond those provided by statute or regulation, with respect to various aspects of the prekindergarten programing and operations. Thereafter, the three Success Academy charter schools commenced their respective prekindergarten programs without executing the Pre-K contract.

Success Academy informed DOE that it would not execute the Pre-K contract because the contract permitted respondent Board of Education of the School District of the City of New

York (hereinafter the Board) to regulate every aspect of its prekindergarten programs, thereby violating Education Law § 3602-ee (12), which Success Academy alleged granted charter entities exclusive authority to oversee and regulate prekindergarten programs offered at charter schools.[1] Success Academy also sought the removal of the allegedly unlawful provisions. After Success Academy submitted invoices to DOE, detailing the number of students enrolled in each prekindergarten program and the amount of funding allegedly due from DOE, DOE declined to make any payment and reiterated that DOE could not provide funding to Success Academy until the Pre-K contract was executed. DOE also maintained that it was authorized by the Education Law to enter into any contracts necessary to implement its prekindergarten plans (*see generally* Education Law §§ 3602-e [5] [d]; 3602-ee [7]) and that DOE had broad power under Education Law § 3602-ee to oversee all of the prekindergarten programs that were included in DOE's consolidated application.

Subsequently, petitioners—Success Academy and certain parents whose children were enrolled in Success Academy's prekindergarten programs for the 2015-2016 school year—appealed DOE's decision to respondent Commissioner of Education, seeking an order declaring that the Pre-K contract was unlawful and compelling DOE to remit payments of funds to Success Academy (*see* Education Law § 310). The Commissioner, relying on Education Law § 3602-ee, explicitly rejected petitioners' argument that DOE lacked the authority to "regulate . . . [the] program requirements" of Success Academy's prekindergarten programs, as DOE had done by way of the Pre-K Contract. The Commissioner further found that, although some provisions of the Pre-K contract were unlawful, Success Academy was properly required to execute the Pre-K contract as a condition to receiving funds from DOE.[2] Petitioners then commenced this proceeding pursuant to CPLR article 78 seeking to annul so much of the Commissioner's determination as found that Success Academy was properly required to execute the Pre-K contract as a condition to receiving funds from DOE and seeking an order that the Pre-K contract was illegal and that DOE was obligated to fund Success Academy's

---

1. Despite this impasse, no party contends that Success Academy had, at this or any other point, the right to directly submit an application for funding to the Department (*see generally* Education Law § 3602-ee [3] [b]).

2. The provisions found unlawful are not at issue on this appeal.

prekindergarten programs. Supreme Court dismissed the petition, and petitioners now appeal.[3]

As to the Commissioner's determination, rendered without a hearing, this Court's "review is limited to whether [the] determination was arbitrary and capricious, irrational, affected by an error of law or an abuse of discretion" (*Matter of Nicholson v Appeals Bd. of Admin. Adjudication Bur.*, 135 AD3d 1224, 1225 [2016] [internal quotation marks and citation omitted]; *see* CPLR 7803 [3]; *Matter of Kittle v D'Amico*, 141 AD3d 991, 992 [2016], *lv denied* 28 NY3d 911 [2017]). Thus, we address petitioners' contention that the Commissioner's determination was affected by an error of law inasmuch as the Commissioner interpreted Education Law § 3602-ee as permitting DOE to "regulate . . . [the] program requirements" of the relevant prekindergarten programs in a manner consistent with the requirements of the Pre-K contract.

Turning first to the Pre-K contract, the contract sets forth requirements with respect to various aspects of a prekindergarten program, including, as relevant here, curriculum, students' uses of digital devices, field trips, meals, daily schedule of the program, students' activities and exercise, staff qualifications and training, record keeping for students' attendance and the ownership of documents generated in connection with the program providers' performance of their obligations pursuant to the contract. More specific examples illustrate the manner in which the Pre-K contract significantly limited the program creativity of a prekindergarten program. The Pre-K contract mandated, down to the minute, the daily amount of time that students were to have access to certain educational materials. It also limited, to 15 minutes, students' daily use of digital devices, including computers and televisions. Further, the Pre-K contract limited program providers to offering three field trips that involved transportation during a school year. Considering these and other requirements of the Pre-K contract, the Commissioner unambiguously interpreted Education Law § 3602-ee as providing a school district with extensive power to regulate the programing and operations of prekindergarten programs run by charter schools included in the school district's consolidated application.

---

**3.** During the pendency of this appeal, a number of individual petitioners withdrew their appeals. This decision refers to the remaining petitioners as petitioners.

Turning to Education Law § 3602-ee, "[d]eference is generally accorded to an administrative agency's interpretation of statutes it enforces when the interpretation involves some type of specialized knowledge" (*Matter of Belmonte v Snashall*, 2 NY3d 560, 565 [2004]). "By contrast, where the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency" (*Matter of Gruber [New York City Dept. of Personnel—Sweeney]*, 89 NY2d 225, 231 [1996] [internal quotation marks and citation omitted]; *Matter of Piccolo v New York State Tax Appeals Trib.*, 108 AD3d 107, 110 [2013]). Whether the Legislature intended Education Law § 3602-ee to permit a school district to regulate a charter school's prekindergarten programing and operations when that charter school is included in the school district's consolidated application invokes questions of pure statutory interpretation, and, therefore, we afford no deference to the Commissioner's interpretation of the statute (*see Matter of Madison-Oneida Bd. of Coop. Educ. Servs. v Mills*, 4 NY3d 51, 59 [2004]; *Matter of Verizon N.Y., Inc. v New York State Pub. Serv. Commn.*, 137 AD3d 66, 68-69 [2016]).

"When interpreting a statute, we turn first to its text as the best evidence of the Legislature's intent[, and, a]s a general rule, a statute's plain language is dispositive" (*Matter of Polan v State of N.Y. Ins. Dept.*, 3 NY3d 54, 58 [2004] [citation omitted]; *see Matter of Retired Pub. Empls. Assn., Inc. v Cuomo*, 123 AD3d 92, 94 [2014]). Further, our analysis is guided by the principle that a statute "must be construed as a whole and . . . its various sections must be considered together and with reference to each other" (*Matter of Shannon*, 25 NY3d 345, 351 [2015] [internal quotation marks and citations omitted]; *see Matter of Notre Dame Leasing v Rosario*, 2 NY3d 459, 464 [2004]).

Initially, Education Law § 3602-ee (12) unambiguously provides charter entities with authority in regard to the programing and operations of prekindergarten programs funded pursuant to the statute. It provides, in relevant part, that "charter schools shall be eligible to participate in universal full-day pre[ ]kindergarten programs under [Education Law § 3602-ee], provided that all such monitoring, programmatic review and operational requirements under [Education Law § 3602-ee] shall be the responsibility of the charter entity and

shall be consistent with the requirements under [Education Law article 56]" (Education Law § 3602-ee [12]). In this context, the term "all" could refer to "the whole amount, quantity, or extent of," or "as much as possible," or "every" or "any whatever" (Merriam-Webster Online Dictionary, all [http://www.merriam-webster.com/dictionary/all] [accessed May 11, 2017]). Regardless of the exact word sense of "all" that the Legislature intended, under any applicable plain and obvious meaning of the term, the Legislature's use of the term "all" tasked the charter entity with full responsibility for the relevant "monitoring, programmatic review and operational requirements" for the relevant prekindergarten programs (Education Law § 3602-ee [12]).[4] The plain meaning of the provision in no way indicates that another entity—such as a school district—holds concurrent responsibility or authority in this regard, let alone superior authority.

██ Consideration of Education Law § 3602-ee (10) does not indicate that the Legislature intended, despite Education Law § 3602-ee (12), for school districts to have power to regulate a charter school's prekindergarten programing and operations when the charter school is included in the district's consolidated application. That provision provides that, "[n]otwithstanding any provision of law to the contrary, a universal full-day pre[ ]kindergarten provider shall be inspected by the department, the school district with which it partners, if any, and its respective licensing, permitting, regulatory, oversight, registration or enrolling agency or entity no fewer than two times per school year, at least one inspection of which shall be performed by the eligible agency's respective licensing, permitting, regulatory, oversight, registration or enrolling agency, as applicable" (Education Law § 3602-ee [10]). Merriam-Webster Dictionary defines the term "inspection" as "a checking or testing of an individual against established standards" (Merriam-Webster Online Dictionary, inspection [http://www.merriam-webster.com/dictionary/inspection] [accessed May 11, 2017]). Notably, the fact that a school district may be responsible for "checking or testing" a charter school prekindergarten program "against established standards" does not indicate that the school district has the power to create the standards against which the prekindergarten program is tested.

---

4. When the Court of Appeals previously addressed the Legislature's use of the term "all," it rejected a restrictive interpretation of the meaning of the term (*Langerman v Langerman*, 303 NY 465, 472 [1952] ["(w)e have said that the word 'all' as used (in the relevant statute) means just that"]).

Although it is sufficient to determine, from the plain meaning of the term "inspection," that a right to inspect does not indicate a right to regulate, this conclusion is also supported by consideration of Education Law article 56. That article, which notably is limited in applicability to charter entities providing kindergarten and first through twelfth grade education (*see* Education Law § 2854 [2] [c]), provides that "the school district in which the charter school is located [has] the right to visit, examine and inspect the charter school for the purpose of ensuring that the school is in compliance with all applicable laws, regulations and charter provisions" (*Matter of New York Charter Schools Assn., Inc. v DiNapoli*, 13 NY3d 120, 126 [2009]; *see* Education Law § 2853 [2-a]). There can be no doubt that, in the context of article 56, a school district's right to inspect is not a right to regulate the programing and operation of a charter school, as the statute specifically provides otherwise: "a charter school is governed by a self-selecting board of trustees that has 'final authority for policy and operational decisions of the school' " (*Matter of New York Charter Schools Assn., Inc. v DiNapoli*, 13 NY3d at 125, quoting Education Law § 2853 [1] [f]). Accordingly, when considering the plain meaning of "inspection" in Education Law § 3602-ee (10)—and even if we also considered the meaning of the term in light of the context in which it is used in article 56—we conclude that the Legislature did not intend for a school district's right of inspection to empower a school district to regulate a charter school's prekindergarten programing and operations when the charter school is included in the district's consolidated application.

◼ Consideration of the remaining provisions of Education Law § 3602-ee does not affect the plain reading of the aforementioned provisions indicating that charter entities generally have programmatic and operational independence while their charter schools are subject to inspection by the relevant school districts for compliance with applicable standards. Moreover, this construction best harmonizes the provisions of the statute in a manner consistent with the Legislature's announced purpose of the SUFDPK program, "to encourage program creativity through competition" (Education Law § 3602-ee [1]). Thus, under a plain reading of Education Law § 3602-ee that harmonizes the provisions of the statute, we find that, contrary to the Commissioner's determination, the Legislature did not intend for a school district to "regulate . . . [the] program

requirements" of a charter school prekindergarten program that was included in the district's consolidated application. Accordingly, as the Commissioner's determination regarding Success Academy's request for funding was affected by its erroneous interpretation of Education Law § 3602-ee, we remit for the Commissioner's reconsideration of Success Academy's application for funding in a manner not inconsistent with this decision (*see Matter of Ogden Land Dev., LLC v Zoning Bd. of Appeals of Vil. of Scarsdale*, 121 AD3d 695, 697 [2014]; *Matter of Homestead Funding Corp. v State of N.Y. Banking Dept.*, 95 AD3d 1410, 1413 [2012]; *Matter of Millpond Mgt., Inc., v Town of Ulster Zoning Bd. of Appeals*, 42 AD3d 804, 806 [2007]; *see generally Matter of Libra v University of State of N.Y.*, 124 AD2d 939, 940 [1986], *appeal dismissed* 69 NY2d 933 [1987], *lv denied* 70 NY2d 603 [1987]).

ROSE, DEVINE, CLARK and MULVEY, JJ., concur.

Ordered that the judgment is reversed, on the law, without costs, petition granted, that part of the determination upholding certain conditions imposed upon petitioners' receipt of certain state funds annulled, and matter remitted to respondent Commissioner of Education for further proceedings not inconsistent with this Court's decision.