Peters, P.J.
 

 Appeal from a judgment of the Supreme Court (Platkin, J.), entered August 30, 2016 in Albany County, which dismissed petitioner’s application, in a proceeding pursuant to CPLR article 78, to review a determination by respondent Commissioner of Education dismissing petitioner’s challenge to the reduction by respondent Board of Education of East Hampton Union Free School District of his salary and benefits following a transfer of position.
 

 Petitioner is a tenured administrator employed by the East Hampton Union Free School District. In June 2003, he was appointed by respondent Board of Education of East Hampton Union Free School District to the position of Assistant Superintendent. Petitioner’s employment contract for that position, which was modified on three occasions, expired on June 30, 2012. Pursuant to the final version of that contract, petitioner earned an annual salary of approximately $205,000. At a June 19, 2012 meeting, the Board approved a reorganization plan for administrative staff within the school district that resulted in petitioner being reassigned and appointed to Middle School Principal, a position within his tenure area, effective July 1, 2012. The Board fixed petitioner’s annual salary for the new position at $180,000. While petitioner did not contest the reassignment, he objected to any reduction in his salary or benefits as a consequence of the transfer. Reasoning that its actions were both lawful and reasonable, the Board declined to reinstate petitioner’s previous salary and benefits.
 

 Petitioner appealed the Board’s determination to respondent Commissioner of Education (see Education Law § 310), alleging that his compensation could not be unilaterally reduced by the Board except as “discipline” pursuant to the procedures set forth in Education Law § 3020-a. The Commissioner dismissed the appeal, finding that petitioner failed to demonstrate that the salary reduction constituted discipline under Education Law § 3020 or that the Board’s actions in that regard were otherwise arbitrary and capricious. Petitioner commenced this proceeding pursuant to CPLR article 78 seeking to annul the Commissioner’s determination, which Supreme Court dismissed. Petitioner appeals.
 

 Education Law § 3020 (1) provides that “[n]o person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in [Education Law § 3020-a].” Petitioner argues that, as a matter of law, the reduction in his salary resulting from his reassignment to Middle School Principal constitutes “discipline [ ]” under the statute, which could not be imposed absent compliance with Education Law § 3020-a. Because—as the Commissioner recognizes—the issue presented is one of pure statutory reading and analysis, we “need not accord any deference to the [Commissioner’s] determination, and [are] free to ascertain the proper interpretation from the statutory language and legislative intent” (Matter of Belmonte v Snashall, 2 NY3d 560, 566 [2004] [internal quotation marks and citation omitted]; see Matter of Madison-Oneida Bd. of Coop. Educ. Servs. v Mills, 4 NY3d 51, 59 [2004]; Matter of DeVera v Elia, 152 AD3d 13, 19 [2017]).
 

 “The main goal in statutory construction is to discern the will of the Legislature and, as the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof” (Matter of Lawrence Teachers’ Assn., NYSUT, AFT, NEA, AFL-CIO v New York State Pub. Empl. Relations Bd., 152 AD3d 171, 173 [2017] [internal quotation marks and citations omitted], lv denied 30 NY3d 904 [Oct. 24, 2017]; see Matter of Shannon, 25 NY3d 345, 351 [2015]; Ronkese v Tilcon N.Y., Inc., 153 AD3d 259, 262 [2017]). In undertaking this endeavor, “[c]ourts may not reject a literal construction of a statute unless it is evident that a literal construction does not correctly reflect the legislative intent” (Myers v Schneiderman, 30 NY3d 1, 12 [2017] [internal quotation marks, brackets and citation omitted]; see A.J. Temple Marble & Tile v Union Carbide Marble Care, 87 NY2d 574, 580-581 [1996]).
 

 “Discipline” is not defined in the Education Law, and therefore we must “construe [this] word[ ] of ordinary import with [its] usual and commonly understood meaning” (Yaniveth R. v LTD Realty Co., 27 NY3d 186, 192 [2016] [internal quotation marks and citation omitted]; see McKinney’s Cons Laws of NY, Book 1, Statutes § 232 at 392-393). The term “discipline” is uniformly defined, both in the legal and ordinary sense, as “punishment” (see Black’s Law Dictionary [10th ed 2014], discipline [defining discipline as “(p)unishment intended to correct or instruct”]; Merriam-Webster Online Dictionary, discipline [http://www.merriam-webster.com/dictionary/discipline] [defining discipline as “punishment”]; Merriam-Webster Collegiate Dictionary 196 [11th ed 2004] [same]; Oxford Living Dictionaries, discipline [https://en.oxforddictionaries.com/definition/ discipline] [defining discipline as to “(p)unish or rebuke formally for an offen(s)e”]; Cambridge Dictionary, discipline [http:// dictionary.cambridge.org/us/dictionary/english/ discipline] [defining discipline as “to punish”]). Applying this commonly understood meaning of the word, we conclude that the term “discipline[ ]” in Education Law § 3020 refers not merely to action that has an adverse impact, but adverse action that is motivated by a punitive intent.
 

 Case law applying and interpreting Education Law § 3020 supports our reading of the statute. “The purpose of [Education Law § 3020] is to protect [tenured educators] from arbitrary imposition of formal discipline. It was not intended to interfere with the day-to-day operation of the educational system” (Holt v Board of Educ. of Webutuck Cent. School Dist., 52 NY2d 625, 632 [1981]; see Matter of Kilduff v Rochester City Sch. Dist., 24 NY3d 505, 509 [2014]). In Holt v Board of Educ. of Webutuck Cent. School Dist. (supra), two tenured teachers commenced separate proceedings against their respective school districts after school administrators placed letters in their permanent files criticizing their performance without conducting a hearing pursuant to Education Law § 3020-a. The Court of Appeals concluded that such letters did not trigger the procedural protections of Education Law § 3020-a because they were simply “critical evaluations” which fell “far short of the sort of formal reprimand contemplated by the statute” (id. at 633). While acknowledging the “sharply critical” content of the letters, the Court found that they fell outside the ambit of the statute because the fundamental purpose of such communications was “to warn, and hopefully to instruct—not to punish” (id.). Thus, Holt confirms that the protections afforded under Education Law § 3020-a apply only to formal action that is motivated by an intent to punish (see also Matter of Beck-Nichols v Bianco, 20 NY3d 540, 559 [2013] [concluding that tenured teachers who were terminated for noncompliance with a school district’s residency requirement “were not entitled to hearings complying with Education Law §§ 2509 (2), 3020 and 3020-a, which deal with teacher discipline,” because a residency requirement is “unrelated to job performance, misconduct or competency”]; Matter of Rosenblum v New York City Conflicts of Interest Bd., 18 NY3d 422, 431 [2012] [holding that Education Law §§ 3020 and 3020-a set out the exclusive means for the Department of Education to “bring( ) misconduct charges against tenured (educators)” and that the term “discipline” within the meaning of the statute “encompasses only job-related penalties that may be imposed upon a tenured pedagogue by his (or her) employer” (emphasis added)]).
 

 Petitioner’s reliance on cases involving employees covered under Civil Service Law § 75, which prohibits imposition of a “disciplinary penalty” without a hearing, is misplaced. While it has been held that a lateral transfer of a tenured civil service employee that results in a diminution of salary or benefits constitutes a form of discipline requiring compliance with the procedural safeguards of Civil Service Law § 75 (see Matter of Bailey v Susquehanna Val. Cent. School Dist. Bd. of Educ., 276 AD2d 963, 965 [2000]; Matter of Borrell v County of Genesee, 73 AD2d 386, 390-391 [1980]), this is so because Civil Service Law § 75 specifically provides that a “demotion in grade and title” constitutes a disciplinary penalty (Civil Service Law § 75 [3]). No comparable statutory language exists within the Education Law. We “cannot by implication supply in a statute a provision which it is reasonable to suppose the Legislature intended intentionally to omit,” as “the failure of the Legislature to include a matter within the scope of an act may be construed as an indication that its exclusion was intended” (McKinney’s Cons Laws of NY, Book 1, Statutes § 74). In other words, “a court cannot amend a statute by inserting words that are not there, . . . [and] an inference must be drawn that what is omitted or not included was intended to be omitted and excluded” (Matter of Chemical Specialties Mfrs. Assn. v Jorling, 85 NY2d 382, 394 [1995] [internal quotation marks omitted]; see McKinney’s Cons Laws of NY, Book 1, Statutes §§ 240, 363). To infer that the Legislature intended to create a per se rule deeming any reduction in compensation associated with a transfer within the educator’s tenure area to be a form of discipline within the meaning of Education Law §§ 3020 and 3020-a would violate these principles.
 

 In light of our interpretation, we find that the Board’s actions with regard to petitioner’s compensation did not constitute discipline under the statute. Rather, the uncontradicted evidence submitted by the Board establishes that petitioner’s reassignment was part of an overall reorganization of the school district’s administrative staff and that his compensation was set after consideration of a number of factors, including the salaries being earned by other middle school principals in the surrounding area, salary reductions for other administrative positions within the school district, recent budgetary cuts and the overall financial constraints of the school district.
 
 *
 
 There is simply no evidence to suggest that the reduction in petitioner’s compensation was the product of any dissatisfaction with petitioner or his job performance or was otherwise undertaken as a means of punishment. Accordingly, the Commissioner properly concluded that petitioner was not entitled to the procedures set forth in Education Law § 3020-a prior to the Board setting his new compensation.
 

 Nor can we conclude that petitioner had a constitutionally protected property interest in the compensation he received while serving as Assistant Superintendent. There can be no dispute that, by virtue of having attained tenure, petitioner “has a protected property interest in [his continued employment in the area of administration] and a right to retain it subject to being discharged for cause in accordance with the provisions of Education Law § 3020-a” (Matter of Gould v Board of Educ. of Sewanhaka Cent. High School Dist., 81 NY2d 446, 451 [1993]; see Perry v Sindermann, 408 US 593, 601-602 [1972]). But petitioner’s tenure does not support a legitimate claim of entitlement to the continued receipt of compensation earned under an expired contract.
 

 “To have a property interest in a benefit, a person . . . must have more than a unilateral expectation of it. He [or she] must, instead, have a legitimate claim of entitlement to it” (Board of Regents of State Colleges v Roth, 408 US 564, 577 [1972]). “Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits” (id.; accord Cleveland Bd. of Ed. v Loudermill, 470 US 532, 538 [1985]; Matter of Daxor Corp. v State of N.Y. Dept. of Health, 90 NY2d 89, 98 [1997]; Matter of Deas v Levitt, 73 NY2d 525, 531 [1989], cert denied 493 US 933 [1989]). Here, petitioner’s right to receive the specific level of compensation earned in his position as Assistant Superintendent derived not from any tenure rights granted under the Education Law, but solely from the terms of his employment contract. Such contract expired on June 30, 2012, prior to the alleged deprivation. Moreover, the contract makes clear that it does not provide for the payment of salary beyond that date and that renewal or extension of its terms could only be effectuated by agreement of the Board. Under these circumstances, petitioner did not have a constitutionally protected property interest in the compensation and benefits derived from his employment contract beyond its June 30, 2012 expiration date (see Board of Regents of State Colleges v Roth, 408 US at 578; cf. Matter of Bauman v Board of Educ. of Watkins Glen Cent. School Dist., 21 AD3d 630, 632 [2005]; Matter of Robbins v Malone Cent. School Dist., 182 AD2d 890, 891-892 [1992], appeal dismissed 80 NY2d 825 [1992]).
 

 Petitioner’s remaining contentions, to the extent not specifically addressed herein, have been reviewed and found to be lacking in merit.
 

 Garry, Mulvey, Aarons and Pritzker, JJ., concur.
 

 Ordered that the judgment is affirmed, without costs.
 

 *
 

 In fact, the record reflects that petitioner’s salary as Middle School Principal is higher than the salaries paid to comparable administrators in Suffolk County and only $5,000 less than the salary of the new, incoming Superintendent of the district.