■ PATRICIA KANE, Individually and as the Limited Administratrix of JEANNE KANE, Deceased, Respondent, v JOHN F. GALTIERI, Respondent-Appellant. NEW YORK CITY POLICE PENSION FUND, Intervenor-Respondent; MARILYN GALTIERI, Intervenor-Appellant-Respondent. [996 NYS2d 78]—

In an action, inter alia, to recover damages for wrongful death, the intervenor Marilyn Galtieri appeals, as limited by her brief, from so much of an order of the Supreme Court, Richmond County (Minardo, J.), dated September 7, 2012, as denied her motion to accord full faith and credit to a final judgment of dissolution of marriage entered April 21, 2009, and a qualified domestic relations order entered April 28, 2009, in a proceeding entitled *Matter of Galtieri v Galtieri*, commenced in the Circuit

Court of the Twentieth Judicial Circuit, in and for Charlotte County, Florida, under Case No. 09-1321-CA, among other things, incorporating a marital settlement agreement entered into between the defendant, John F. Galtieri, and her, and granted the plaintiff's cross motion to compel the intervenor New York City Police Pension Fund and the Sheriff of the City of New York to pay the plaintiff all funds collected or held by the New York City Police Pension Fund otherwise due to the defendant from the defendant's disability pension to satisfy the judgment entered in this action, and to make all future pension benefit payments to the plaintiff until that judgment is satisfied, and the defendant cross-appeals from the same order.

Ordered that the cross appeal by the defendant is dismissed as abandoned (*see* 22 NYCRR 670.8 [c], [e]); and it is further,

Ordered that the order is affirmed insofar as appealed from; and it is further,

Ordered that one bill of costs is awarded to the plaintiff and the intervenor New York City Police Pension Fund, payable by the intervenor Marilyn Galtieri.

This wrongful death action presents issues related to the defendant's transfer to his second wife of his rights in his disability pension. The action arises from the murder of the plaintiff's mother, Jeanne Kane (hereinafter the decedent), by the plaintiff's father, the defendant, John F. Galtieri. The defendant and the decedent married in 1976. In 1980, the defendant retired from the New York City Police Department on a disability pension. On May 19, 2003, the defendant and the decedent were divorced by a judgment entered in the State of New Jersey. Shortly after the divorce, the defendant married Marilyn Galtieri (hereinafter Marilyn) in the State of Florida. In March 2005, because the defendant failed to pay the decedent certain amounts due under the New Jersey judgment, the New Jersey Superior Court directed that payments be made to the decedent directly from the New York City Police Pension Fund (hereinafter the Pension Fund). Later, because the defendant still failed to make required payments under the New Jersey judgment, the Superior Court directed that certain amounts due under the New Jersey judgment be paid directly to the decedent from the defendant's Social Security Disability Insurance benefits. The defendant responded by voluntarily terminating his disability benefits. Accordingly, the Superior Court directed that the Pension Fund pay increased amounts from the defendant's pension directly to the decedent.

On January 30, 2007, the defendant shot and killed the decedent in Richmond County. About one year later, in January

2008, the plaintiff commenced this action against her father, individually and as the limited administrator of her mother's estate, to recover damages for wrongful death.

On February 19, 2009, the defendant was convicted in the Supreme Court, Richmond County, of murder in the second degree and other crimes related to the decedent's death. On February 25, 2009, less than one week after the defendant was convicted, the plaintiff moved to amend the complaint in this action to add a cause of action under the "Son of Sam law" (see Executive Law § 632-a [3]), and to attach the defendant's pension.

Meanwhile, Marilyn had commenced a proceeding in Florida for the dissolution of her marriage to the defendant. On March 16, 2009, less than one month after he was convicted of murder, the defendant filed a bankruptcy petition in the United States Bankruptcy Court for the Middle District of Florida. Although the filing of the bankruptcy petition automatically stayed litigation, the defendant and Marilyn entered into an agreement settling the Florida dissolution proceeding (hereinafter the settlement agreement). The settlement agreement provided, as relevant here, that Marilyn would receive, directly from the Pension Fund, the sum of $2,800 from each monthly pension payment of $2,805.55 otherwise due to the defendant under the pension, and the defendant would receive the sum of $5.55. In other words, the defendant and Marilyn agreed that the intervenor-appellant would receive 99.8% of the defendant's pension. That pension was the defendant's only asset. The settlement agreement was expressly incorporated into a judgment in the Florida dissolution proceeding dated April 15, 2009, and entered on April 21, 2009 (hereinafter the Florida dissolution judgment), and memorialized in a qualified domestic relations order (hereinafter QDRO) entered in the Florida proceeding on April 28, 2009.

The defendant's bankruptcy petition had been dismissed as defective on April 2, 2009, but the defendant filed another bankruptcy petition on April 20, 2009, resulting in another automatic stay of litigation.

On May 1, 2009, while the second automatic stay prevented the wrongful death action from proceeding, Marilyn filed the Florida dissolution judgment in Queens County pursuant to CPLR article 54 as a step toward enforcing it in New York. She then promptly moved in this action to accord full faith and credit to the Florida dissolution judgment and the QDRO based thereon so that the defendant's monthly pension benefit would be paid directly to her by the Pension Fund, except for the $5.55 that he retained.

The defendant's second bankruptcy petition, like the first, was defective, and the Bankruptcy Court dismissed it on May 19, 2009. On May 27, 2009, the defendant was sentenced in the Supreme Court, Richmond County, to an indeterminate term of imprisonment of 25 years to life upon his conviction of murder in the second degree, plus other terms of imprisonment on other related criminal counts.

On the same day that the defendant was sentenced, the Supreme Court, Richmond County, in the instant action, signed an ex parte order of attachment submitted by the plaintiff with respect to the defendant's pension. Later, the plaintiff moved to confirm that ex parte order of attachment. Marilyn opposed the plaintiff's several motions in that regard. In an order dated March 8, 2010, inter alia, the Supreme Court noted that neither Marilyn nor the Pension Fund had formally moved to intervene, but it deemed them each to have made such a motion and granted that relief nunc pro tunc. The Supreme Court also granted the plaintiff's motions to confirm the order of attachment and for leave to amend the complaint to add a cause of action under the Son of Sam law. The court denied, as academic, Marilyn's cross motion, in effect, to enforce the property settlement provision of the Florida dissolution judgment, which included the distribution of the defendant's pension benefits.

In July 2010, the Supreme Court awarded the plaintiff summary judgment in this action on the issue of liability, and, in February 2012, after a jury trial on the issue of damages only, she obtained a verdict against the defendant. On May 4, 2012, judgment was entered on the verdict in favor of the plaintiff, in her capacity as limited administrator of the decedent's estate, and against the defendant in the amount of $31,736,043, and in favor of the plaintiff in her individual capacity and against the defendant in the amount of $50,000.

One week after the judgment was entered in this action, Marilyn moved to accord full faith and credit to the Florida dissolution judgment and the QDRO, asserting that she was entitled to a portion of the defendant's pension, as provided in the Florida dissolution judgment and the QDRO. She argued that the Son of Sam law did not override the provisions of Retirement and Social Security Law § 110 (2) and Administrative Code of the City of New York §§ 13-212, 13-264 and 13-181, which forbid attachment of, or execution on, a pension. The plaintiff opposed the motion, and moved to compel the Pension Fund and the Sheriff of the City of New York to pay her all funds collected or held by the Pension Fund otherwise due to the defendant from the defendant's pension in order to satisfy

the final judgment in this action, and to make all future payments to the plaintiff until the judgment was satisfied. In the order appealed from, dated September 7, 2012, the Supreme Court, inter alia, denied Marilyn's motion and granted the plaintiff's motion.

"Under the full faith and credit clause . . . , where collateral attack on the ground of fraud would be permitted in the courts of the foreign State in which the judgment had been rendered, our courts will entertain a similar challenge" (*Feinberg v Feinberg*, 40 NY2d 124, 128 [1976]). Here, Florida law permits a collateral attack on the defendant's transfer of his pension to the intervenor-appellant on the ground that it constituted a fraudulent transfer (*see* Fla Stat Ann § 726.105 ["Transfers fraudulent as to present and future creditors"]; *see also* Debtor and Creditor Law §§ 273-a ["Conveyances by defendants"], 275 ["Conveyances by a person about to incur debts"], 276 ["Conveyance made with intent to defraud"]). Accordingly, the Supreme Court properly entertained the plaintiff's challenge to the validity of the relevant portions of the Florida dissolution judgment and the QDRO. Further, the Supreme Court correctly concluded that the defendant's transfer to Marilyn of his pension—his only asset—was fraudulent, and that Marilyn was not entitled to have the pension provisions of the Florida dissolution judgment and the QDRO be given full faith and credit. Indeed, the defendant's fraudulent intent is, on this record, manifest, as demonstrated by his filing the two defective bankruptcy petitions and by his entering into the settlement agreement almost immediately after he was convicted of murder. Obviously, his intent in transferring his pension was to render himself judgment proof.

Next, we reject Marilyn's contention that the defendant's pension is not subject to execution or attachment by virtue of section 110 (2) of the Retirement and Social Security Law or under certain provisions of the Administrative Code of the City of New York (*see* Administrative Code of City of NY §§ 13-181, 13-212, 13-264). As Marilyn correctly contends, section 110 (2) of the Retirement and Social Security Law provides that the right of a person to a pension "[s]hall not be subject to execution, garnishment, attachment, or any other process whatsoever" (Retirement and Social Security Law § 110 [2]). In 2001, however, the Legislature amended the Son of Sam law to subject the "[f]unds of a convicted person" to an action for damages by a crime victim, a crime victim's representative, or certain other persons (L 2001, ch 62, § 1; *see* Executive Law § 632-a [1] [a], [c], [d]; [3]). The phrase "funds of a convicted person" was

broadly defined as "*all* funds and property received from *any* source" (Executive Law § 632-a [1] [c] [emphasis added]).

We conclude, for the reasons stated by our colleagues in the Appellate Division, Third Department (*see Matter of New York State Off. of Victim Servs. v Raucci*, 97 AD3d 235 [2012], *revd on other grounds* 20 NY3d 1049 [2013]), that the defendant's pension is subject to execution under the Son of Sam law. Both the clear statutory language and the legislative history of the 2001 amendments to the Son of Sam law evince the Legislature's intent to permit crime victims to recover assets from convicted persons, including pensions, regardless of the source of the convicted person's funds (*see id.* at 239-240). As the Third Department concluded, a contrary holding would "directly thwart[ ] the Legislature's stated intent of holding convicted criminals financially accountable regardless of their source of wealth" (*id.* at 240).

Additionally, we conclude, for the same reasons, that the 2001 Son of Sam law amendments superseded sections 13-181, 13-212 and 13-264 of the Administrative Code of the City of New York.

Marilyn's remaining contentions are without merit.

Accordingly, the Supreme Court properly denied Marilyn's motion to accord full faith and credit to the pension provisions of the settlement agreement incorporated into the Florida dissolution judgment and the QDRO, and properly granted the plaintiff's cross motion to compel the Pension Fund and the Sheriff of the City of New York to pay the plaintiff all funds collected or held by the Pension Fund that are otherwise due to the defendant from the defendant's disability pension in order to satisfy the final judgment in this action. Rivera, J.P., Balkin, Dickerson and Cohen, JJ., concur. **[Prior Case History: 2012 NY Slip Op 51745(U).]**