N.M.P. v Jones (2024 NY Slip Op 24057)

BODY {
font-family : "Times New Roman", Times, serif;
font-size : larger;
}

P {
line-height: 150%;
text-indent: 2em
}
.auto-style1 {
text-decoration: underline;
}

[*1]

N.M.P. v Jones

2024 NY Slip Op 24057

Decided on February 20, 2024

Supreme Court, Warren County

Muller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.


Decided on February 20, 2024
Supreme Court, Warren County

N.M.P., Individually and as Administratrix of the Estate of G.R.J., Petitioner,

againstNicholas D. Jones, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA and THE PRUDENTIAL ASSIGNED SETTLEMENT SERVICES CORP., Respondents.
Index No. 64985

Napierski, VanDenburgh, Napierski & O'Connor, LLP, Albany (Thomas J. O'Connor of counsel), for petitioner.Stevens & Lee, P.C., New York (Bradley L. Mitchell and Joseph E. Wolfson of counsel), for respondent Prudential Insurance Company of America.
Robert J. Muller, J.

On March 30, 2016, respondent Nicholas D. Jones "shook his barely three-week-old daughter in a manner that ultimately resulted in her death" (People v Jones, 159 AD3d 1199, 1199 [3d Dept 2018]). He was thereafter charged in a five-count indictment with, inter alia, murder in the second degree. On October 26, 2016, he pleaded guilty to one count of manslaughter in the first degree in full satisfaction of the indictment and was sentenced to a prison term of 25 years, followed by five years of post-release supervision (see People v Jones, 159 AD3d at 1199).
On February 14, 2018, petitioner — the infant's mother — commenced a civil action against Jones individually and as administratrix of the infant's estate. Issue was joined and, on August 20, 2019, petitioner moved by Order to Show Cause for a preliminary injunction restraining Jones from transferring or conveying any of his assets pending the outcome of the action — including an annuity with respondent Prudential Insurance Company of America (hereinafter Prudential) naming Jones as beneficiary in accordance with the terms of a structured settlement agreement. As relevant here, the annuity provides for monthly payments commencing on August 1, 2014 and continuing for the entirety of Jones' life, with 348 monthly payments — or 29 years of payments — guaranteed. A monthly sum of $1,438.67 was due in [*2]August 2014, with this amount increasing by 3% each year.[FN1]
Petitioner also filed a second motion seeking summary judgment on the issue of liability and the scheduling of an inquest. On January 6, 2020, Orders were issued granting both motions.
An inquest was subsequently held and, on December 21, 2020, the Court issued a Decision and Order awarding petitioner damages in the amount of $75,000.00 for the wrongful death of the infant, $1,000,000.00 for the infant's conscious pain and suffering, $250,000.00 for intentional infliction of emotional distress, and $3,000,000.00 in punitive damages, for a total award of $4,325,000.00. Petitioner thereafter entered a judgment in this amount against Jones on February 17, 2021.
On May 18, 2022, petitioner filed an application under the Son of Sam Law (see Executive Law § 632-a) for an Order directing the transfer and assignment of Jones' interest in the annuity to petitioner until such time as the judgment has been fully satisfied or, alternatively, the annuity has been exhausted. This motion was granted without opposition by Order dated July 5, 2022. Prudential thereafter began making the monthly annuity payments to petitioner, with such payments held in escrow by Napierski, Vandenburgh, Napierski, O'Connor, LLP (hereinafter the Napierski firm), petitioner's counsel.
On October 25, 2022, petitioner filed an application in the Warren County Surrogate's Court for an Order authorizing distribution of the annuity payments collected to date in partial satisfaction of the February 2021 judgment. According to petitioner, the application attached copies of (1) a retainer agreement between petitioner and the Napierski firm, dated February 20, 2020 (hereinafter the retainer agreement); (2) a copy of expenses incurred by the Napierski firm in its representation of petitioner; and (3) an affidavit from economist James Lambrinos, Ph.D. which calculated the discounted present value of future payments under the annuity beginning November 1, 2022 to be $870,212.40, based on Jones' life expectancy.
On December 8, 2022, Warren County Surrogate's Court issued an Interim Decree granting petitioner's request to distribute the amounts held in escrow — namely, $86,563.31 — as follows: (1) $26,526.08 to the Napierski firm as partial payment of counsel fees; (2) $6,985.08 to the Napierski firm as reimbursement for expenses; and (3) $53,052.15 to the infant's estate.[FN2]
Surrogate's Court further directed "that continuing monthly annuity payments from Prudential . . . be held in the Napierski firm escrow account pending further action in Supreme and Surrogate's Courts" [Interim Decree, attached as Exbibit "A" to O'Connor Affidavit, at p 2].
On December 30, 2022, petitioner filed an application by Order to Show Cause seeking, inter alia, an Order (1) approving the retainer agreement; (2) directing Prudential to pay petitioner the sum of $291,370.00 from the annuity, which represents one-third of $874,114.00; [*3]and (3) directing petitioner to pay this $291,370.00 to the Napierski firm to satisfy the remaining counsel fees due and owing. Attached to this application was the retainer agreement, together with a second affidavit from Lambrinos, this one calculating the discounted present value of future payments under the annuity beginning February 1, 2023 to be $874,114.00, based on Jones' life expectancy.
Petitioner subsequently withdrew this application and, on June 8, 2023, filed the instant application by Order to Show Cause seeking, inter alia, an Order (1) directing Prudential to restructure the remaining guaranteed payments under the annuity and pay petitioner the sum of $141,288.05, which represents one-third of $423,864.14; (2) directing that petitioner use these funds to satisfy the remaining counsel fees due and owing under the February 20, 2020 retainer agreement; and (3) directing Prudential to recalculate the reduced monthly payments to petitioner, with such payments to continue until such time as the judgment has been fully satisfied or the annuity has been exhausted. Attached to this application is the retainer agreement, together with a third affidavit from Lambrinos, this one calculating the discounted present value of the remaining guaranteed payments under the annuity, beginning May 1, 2023 and continuing through July 1, 2043 — the date of the last payment — to be $423,864.14.
Petitioner contends that it is entitled to the requested relief "under the auspices of the Son of Sam Law . . . ; Insurance Law § 3212 (d) (2); CPLR 5240; CPLR 5041 (c) and (e), and decretal paragraph no. 5 of the . . . July 5, 2022 Order" [O'Connor Affidavit, at ¶ 3]. Prudential has appeared in opposition, contending that petitioner is not entitled to the requested relief under any of the statutes listed, nor is she entitled to such relief under the terms of the July 5, 2022 Order.
At the outset, the retainer agreement provides, in pertinent part:
"CONTINGENT FEE — THE LAW FIRM SHALL 
RECEIVE A FEE ONLY IF A SETTLEMENT OR RECOVERY IS OBTAINED. In consideration of the legal services performed, the law firm is to receive as and for its reasonable fee for services, a sum equal to Thirty-Three and One-Third [Percent] (33 1/3%) . . . of any settlement or judgment collected on the above claims after deducting from the sum recovered expenses and disbursements."It is further understood and agreed that if satisfaction of any judgment involves the recovery of periodic payments of monies owed to the judgment debtor, then in that event, the plaintiff . . . will be entitled to Sixty-Six and Two-Thirds (66 2/3) of any such payments and the law firm will be entitled to Thirty-three and One-Third (33 1/3) of any such payments" [Retainer Agreement, attached as Exhibit "A" to Parker Affidavit, at p 1 (emphasis in original)].To the extent that expenses and disbursements were deducted in the Interim Decree of Surrogate's Court, there does not appear to be any dispute that counsel for petitioner is entitled to fees in the amount of one-third of that portion of the judgment collected from the annuity payments. That being said, the question is whether petitioner may recover one-third the discounted present value of the remaining guaranteed payments under the annuity to satisfy the counsel fees due and owing. This appears to be a question of first impression and, as such, each of the statutes relied upon by petitioner will be addressed ad seriatim.
Beginning with the Son of Sam Law, "'Executive Law § 632-a sets forth a statutory [*4]scheme intended to improve the ability of crime victims to obtain full and just compensation from the person(s) convicted of the crime by allowing crime victims or their representatives to sue the convicted criminals who harmed them when the criminals receive substantial sums of money from virtually any source and protecting those funds while litigation is pending'" (Prindle v Guzy, 179 AD3d 1169, 1170 [3d Dept 2020], quoting Waldman v State of New York, 163 AD3d 1114, 1115 [3d Dept 2018] [internal quotation marks, brackets and citations omitted], lv denied 32 NY3d 910 [2018]; see Matter of New York State Crime Victims Bd. v Harris, 68 AD3d 1269, 1270-1271 [3d Dept 2009]). "As enacted in 1992, the Son of Sam Law only permitted a crime victim to recover 'profits of the crime'" (Prindle v Guzy, 179 AD3d at 1170, quoting Executive Law former § 632-a). "However, in 2001, the Legislature amended the law to allow a crime victim to seek recovery from 'funds of a convicted person,' which includes 'all funds and property received from any source by a person convicted of a specified crime,' [while] specifically exclud[ing] child support and earned income" (Prindle v Guzy, 179 AD3d at 1170, quoting Executive Law § 632-a [1] [c]). "[T]he amendments to the Son of Sam Law were intended to ensure that convicted criminals are 'held accountable to their victims financially, regardless of their source of wealth'" (Matter of New York State Off. of Victim Servs. v Raucci, 97 AD3d 235, 239 [3d Dept 2012], revd on other grounds 20 NY3d 1049 [2013], quoting Senate Mem in Support of L 2001, ch 62, reprinted in 2001 McKinney's Session Laws of NY, at 1312 [emphasis added]).
While CPLR 5205 (c) exempts annuities and other funds "held in trust for a judgment debtor . . . from application to the satisfaction of a money judgment," it has been expressly held "that CPLR 5205 (c) is superceded by the Son of Sam Law" (Prindle v Guzy, 179 AD3d at 1171; see Matter of New York State Off. of Victim Servs. v Raucci, 106 AD3d 1138, 1140 n [2013]). Indeed, there is no question — and no dispute amongst the parties — that petitioner is entitled to all future annuity payments until such time as the judgment has been fully satisfied or, alternatively, the annuity has been exhausted (see Prindle v Guzy, 179 AD3d at 1171; Kane v Galtieri, 122 AD3d 582, 586-587 [2d Dept 2014]; Matter of New York State Off. of Victim Servs. v Raucci, 106 AD3d at 1140 n; cf. Matter of New York State Off. of Victim Servs. v Raucci, 97 AD3d at 240-241). The question, however, is whether the Son of Sam Law entitles petitioner to the discounted present value of these future payments. Under the circumstances, the Court finds that this question must be answered in the negative.
"'When interpreting a statute, [the Court must] turn first to its text as the best evidence of the Legislature's intent[, and, a]s a general rule, a statute's plain language is dispositive'" (Matter of DeVera v Elia, 152 AD3d 13, 19 [3d Dept 2017], affd 32 NY3d 423 [2018], quoting Matter of Polan v State of NY Ins. Dept., 3 NY3d 54, 58 [2004] [citation omitted]; see Matter of Retired Pub. Empls. Assn., Inc. v Cuomo, 123 AD3d 92, 94 [3d Dept 2014]). Here, Executive Law § 632-a — by its plain language — provides that "'[f]unds of a convicted person' means all funds and property received from any source by a person convicted of a specified crime" [emphasis added]. To the extent that Jones has yet to receive the remaining guaranteed monthly payments under the annuity, the statute suggests that such payments are excluded from its reach. Once the guaranteed monthly payments are received, at that point they become available — and have been made available — to satisfy the February 2021 judgment.
In this regard, it must be noted that the annuity expressly provides that the "[a]nnuitant . . . shall have no right . . . to accelerate . . . any of the [p]eriodic [p]ayments" [Annuity Contract, attached as Exhibit "B" to Lambrinos Affidavit, at p 1]. While petitioner contends that "a crime [*5]victim does not stand in the same shoes as a potential ordinary creditor" (Matter of New York State Crime Victims Bd. v Harris, 68 AD3d at 1271) — and she is correct to the extent that she, unlike ordinary creditors, can access the annuity payments to satisfy her judgment — her status as a crime victim does not entitle her to override this provision of the annuity and access the discounted present value of the remaining payments. To authorize an accelerated lump sum payment in the amount of $141,288.05 materially changes the terms of the annuity contract and may very well result in prejudice to Prudential, with this figure based upon Lambrinos' calculations — which are of course subject to error (cf. Kalatizadeh v Zagaroff, 29 Misc 3d 1218[A], 2010 NY Slip Op 51867[U], *1 [Sup Ct, Nassau County 2010]). Although unclear how Prudential would recalculate petitioner's reduced monthly payments following issuance of the requested lump sum payment, it appears that petitioner herself could be prejudiced if Lambrinos' numbers are used in this recalculation and then prove to be inaccurate.
It also bears noting that a reasonable alternative exists. Specifically, Prudential can pay the Napierski Firm one-third of each monthly annuity payment — as seemingly envisioned in the retainer agreement — and pay petitioner the remaining two-thirds. Indeed, Prudential has indicated a willingness to make such payments. While this alternative is perhaps less desirable to the Napierski Firm, it is nonetheless viable and will result in the Firm being paid.
Turning now to Insurance Law § 3212 (d) (2), this section provides, in pertinent part:
"The annuitant shall not be compelled to exercise any such rights, powers or options contained in the annuity contract, nor shall creditors be allowed to interfere with or terminate the contract, . . . except that the court may order the annuitant to pay to a judgment creditor or apply on the judgment in installments, a portion of such benefits that appears just and proper to the court, with due regard for the reasonable requirements of the judgment debtor and his family, if dependent upon him, as well as any payments required to be made by the annuitant to other creditors under prior court orders."According to petitioner, Insurance Law § 3212 (d) (2) authorizes the Court to order Jones — the annuitant — to pay her — the judgment creditor — the discounted present value of the remaining guaranteed payments due and owing under the annuity. The Court, however, finds this contention to be without merit. The express language of Insurance Law § 3212 (d) (2) intimates that — where an annuity is paid in installments — the Court may direct that it be "appl[ied] on the judgment in installments." Indeed, the statute includes no mention of utilizing the discounted present value of remaining payments due and owing under an annuity contract to satisfy a judgment. The Court was likewise unable to locate any case law applying the statute in this manner, nor did petitioner provide any.
Petitioner next relies upon CPLR 5240, which provides that "[t]he court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." Here, petitioner asks the Court to exercise its equitable powers under CPLR 5240 and authorize an enforcement procedure whereby Prudential must pay petitioner a lump sum of $141,288.05 as the discounted present value of the remaining payments due and owing under the annuity. The Court declines, however, finding that such a directive would constitute an abuse of its equitable powers. In this regard, the underlying purpose of CPLR 5240 is to prevent "any unreasonable annoyance, expense, embarrassment, disadvantage [*6]or other prejudice stemming from the enforcement at issue" (Donaghy v Donaghy, 203 AD2d 803, 805 [3d Dept 1994]; see Plymouth Venture Partners, II, L.P. v GTR Source, LLC, 37 NY3d 591, 600-601 [2021]). As set forth above, if Prudential is directed to make this lump sum payment and Lambrinos' calculations ultimately prove to be inaccurate, then Prudential or even petitioner could be prejudiced as a result. On the other hand, there will be no prejudice if the annuity payments are made monthly in accordance with the terms of the contract, with petitioner receiving two-thirds and counsel for petitioner receiving one-third.
Petitioner next contends that she is entitled to the requested relief under CPLR 5041 (c), which provides that — when determining what judgment is to be entered on a verdict in an action to recover damages for personal injury, injury to property or wrongful death — "[p]ayment of that portion of the attorney's fees related to the future periodically paid damages shall also be payable in a lump sum, based on the present value of the annuity contract purchased to provide payment of such future periodically paid damages pursuant to subdivision (e) of this section." CPLR 5041 (e) then provides that "the court shall enter a judgment for the amount of the present value of an annuity contract that will provide for the payment of the remaining amounts of future damages in periodic installments."
While this argument is well taken, the facts of this matter simply do not fall within the purview of CPLR 5041. In this regard, there was no annuity contract purchased to fund the February 2021 judgment — which did not include an award for future damages in any event. Rather, the annuity contract in question was purchased on June 14, 2005 to fund a judgment awarded to Jones' mother in a medical malpractice action she commenced on his behalf.
Finally, to the extent petitioner contends that she is entitled to the requested relief under decretal paragraph No. 5 of the July 2022 Order, such contention is without merit. This decretal paragraph states as follows:
"During the period that the annuity benefits are paid to [petitioner] and until the judgment is fully satisfied or until the benefits under said annuity have been exhausted, whichever event first occurs, [petitioner] shall have the exclusive right to transfer or assign the benefits under said annuity pursuant to Insurance Law § 3212 (d) (4) and General Obligations Law § 5-1701-1709 and CPLR 5420 in order to satisfy attorneys' fees owed under the . . . retainer agreement."This decretal paragraph appears to pertain to the transfer or assignment of the annuity payments — and not to the acceleration of the payments, the relief sought herein. Furthermore, the paragraph merely provides petitioner with the exclusive right to transfer or assign the payments; it does not expressly state that she may do so.
Inasmuch as this decretal paragraph references General Obligations Law § 5-1701 et seq. — also known as the Structured Settlement Protection Act — such Act governs applications to transfer structured settlement payments. These types of applications are slightly different from that presently before the Court, with factoring companies offering structured settlement recipients immediate cash advances in exchange for future payments. The fifth decretal paragraph of the July 2022 Order could perhaps be interpreted as granting petitioner standing to sell a portion of the future payments due and owing under the annuity contract to a factoring company in exchange for a lump sum payment that she could then use to pay counsel fees to the Napierski Firm. Such sale, however, would need to be approved by the Court (see General Obligations Law § 5-1706).
Based upon the foregoing, the requested relief is denied and the petition is dismissed.[FN3]

Therefore, having considered the Affidavit of Thomas J. O'Connor, Esq. with exhibit attached thereto, sworn to June 1, 2023, submitted in support of the motion; Amended Affidavit of Nicole M. Parker, Esq. with exhibit attached thereto, sworn to March 30, 2023, submitted in support of the motion; Affidavit of James Lambrinos, Ph.D. with exhibits attached thereto, sworn to March 27, 2023, submitted in support of the motion; Memorandum of Law of Thomas J. O'Connor, Esq., dated June 1, 2023, submitted in support of the motion; Affirmation of Bradley L. Mitchell, Esq. with exhibits attached thereto, dated July 6, 2023, submitted in opposition to the motion; Memorandum of Law of Bradley L. Mitchell, Esq., dated July 6, 2023, submitted in opposition to the motion; Reply Memorandum of Law of Thomas J. O'Connor, Esq. with exhibit attached thereto, dated July 13, 2023, submitted in further support of the motion; and oral argument having been held on January 11, 2024 with Thomas J. O'Connor, Esq. appearing on behalf of petitioner and Joseph E. Wolfson, Esq. appearing on behalf of Prudential, it is hereby
ORDERED that the relief requested is denied; and it is further
ORDERED that the petition is dismissed without prejudice.
The above constitutes the Decision and Order of the Court.
The original of this Decision and Order has been filed by the Court. Counsel for Prudential is hereby directed to promptly obtain a filed copy of the Decision and Order for service with notice of entry upon petitioner in accordance with CPLR 5513.
Dated: February 20, 2024Lake George, New YorkROBERT J. MULLER, J.S.C.ENTER:
Footnotes

Footnote 1: By Order entered on June 8, 2011, Jones was authorized to transfer 144 monthly payments of $475.00 each, beginning on July 1, 2011 and ending on June 1, 2023 (for a total of $68,400.00), to J.G. Wentworth for the amount of $30,200.00 — with a portion of these payments funded by the annuity. The annuity also provided for four periodic lump sum payments, all of which have been paid. 

Footnote 2: Surrogate's Court allocated "100% [of this $86,563.31] to conscious pain and suffering" [Interim Decree, at p 2]. Although not specified in the record, presumably this $86,563.31 includes the last of the four lump sum payments funded by the annuity — a payment of $60,000.00 that was due on August 1, 2022. 

Footnote 3: To the extent that petitioner may wish to submit an application directing Prudential to pay two-thirds of the remaining guaranteed monthly payments to petitioner and one-third to the Napierski Firm, dismissal is without prejudice.